Is there a reason why you weren't here? We thought you weren't coming because we hadn't heard from you. I'm sorry. I got caught in traffic. I'm coming all the way from the valley. I'm sorry. I didn't realize. I'm so sorry. Go ahead. May it please the court, my name is Marjan Bahmani and I represent the petitioners who are a family of four, Suri Mazloom, Farzad Baktash, Farhad Baktash, and Hossein Baktash. It's a mother and father and two sons. Basically, the immigration judge, this case, as far as the credibility and as far as every other aspect of the case is really undisputed except for the burden of proof or the standard of proof when it comes to whether the government is unwilling or unable to protect my clients or the petitioners, the Netherlands governments. Can I ask about that? I mean, in your opinion, what is the standard of proof? Because I mean, I think there's some suggestion, at least based on the evidence in the record that maybe you could question how the police handled one of the incidences here, but it's the Netherlands. I mean, I just don't see widespread abuse going on in the Netherlands, similar to what we see or even the allegations that are made in other countries. So I'd be interested if you think, I mean, if we say we agree that the evidence suggests that maybe the police didn't handle this appropriately in this individual case, is that enough for your client to succeed or do you need to show something more than that? Your Honor, I believe that if the standard for the well-founded fear of persecution is 10 percent, which is barely a minimum standard, I don't think why – I don't see why the standard for whether the government of the Netherlands is unwilling or unable to protect the petitioners or asylum seekers should be, honestly, in this case, beyond a clear and convincing or beyond a reasonable doubt. We submitted numerous documentation. Wait. You're confusing things. There's a past persecution issue. Exactly. And there's the fear of future persecution. The 10 percent comes into the second. I understand. Right? I understand. But first – either we first need the first or we need to agree that we're not going to worry about the first and we're going to look at the second with the burden on you. I understand. So the question is, which are we doing? I believe that the asylum seeker who's coming to this country, as far as the REAL ID Act is concerned, his testimony should have been sufficient if it was credible, concise, and specific. It was sufficient. The question – it was credible. The question is whether he demonstrated that the government of the Netherlands was unable or unwilling to help, although they prosecuted. Now, I understand that at the scene, it appears that the police, at least from their testimony, which was credited, that the police were less than helpful at the scene and perhaps were not super energetic afterwards. But they did go forward and there was a prosecution. And then we have this kind of evidentiary hole about what happened to the prosecution. We never actually found out. So there's some cryptic statement about there wasn't an adequate statement by the – it was an inadmissible statement by the victim and whether it was inadmissible because it was – he was – I mean, the problem is perhaps that they're here, they're not there and how could they testify? I don't know what the problem was. But it's a very unusual case in that there was a prosecution. They didn't just sit on their hands. And so the question is, is that proof that they were unable or unwilling to help when they did help? It didn't work, but they did try. Yeah, no. It depends what we consider the government of the Netherlands. The police is part of the government of the Netherlands. Okay. And the police is the first step, the first people who are supposed to help immigrants or asylum seekers in the country or citizens of different color or background in the country. If the police doesn't do its job in any country, if the police doesn't do its job, the prosecutor – the prosecution's office is going to have a very tough time winning the case in court. It doesn't matter whether the prosecution afterwards does – goes out of his way to help people if the record is unclear, if the witnesses weren't able to testify. I mean, at the night of the incident, seriously, the police went to the scene of the incident. There was – Farzad Bakhtash was on the ground unconscious, beat – almost beaten to death. Okay? They didn't even stand there to take him to the – to make sure that the – that the ambulance is going to take him to the hospital. I mean, I have not seen any – even in countries where very bad things happen. Well, I have a question about that. Yes. He did testify – not testify – in the original police report, he said that he was taken in an ambulance to the hospital. He wasn't, Your Honor. But he said – I read the police report last night. Well, the police report was wrong on a couple of different things also. They used a different identity for one of the persecutors. They used a comment. I don't have the police report with me right now. Do you know what language I mean where he said this? I'm sorry? Do you know where – do you agree that it is in the police report? I have seen that the police report was not completely accurate, which is another problem, actually. And it can – But how are you disputing the police report? Just based on your client's testimony, or was there other evidence that was put in? Was there – Well, Your Honor, in one part of the police report, I think they even referred to my clients as people from Iraq, as opposed to Iranians, which are two different countries. No, I understand. I mean, I understand that Iraq and Iran – Anyway, he says in the police report, according to this translation, I really came to, in the OLVG hospital in Amsterdam, I was helped on the spot by an ambulance. No, the ambulance arrived on the scene, Your Honor. The ambulance arrived on the scene. Oh, I thought that their testimony – their asylum reports and their testimony was that they had to drive them to the hospital. Exactly. The ambulance – the daughter of – the daughter of the – the daughter called the ambulance. Okay. Until the police arrived. The daughter called the ambulance. But the ambulance didn't take them. The ambulance came, but didn't take the Farzad doctors or any of the – What does it mean to say I was helped on the spot by an ambulance? No, the ambulance came, but they didn't take him to the hospital. So they provided – but they provided medical care on the scene, but they didn't take him to the hospital. Yes, but – Okay. I see. Okay. If the person is on the floor unconscious, I'm just – Look, you're asking a court to decide a medical issue that happened several years ago in Amsterdam. Well, your larger point is the police were there and they didn't do anything about the guy on the floor. No, actually, it is one of the points. The point is there is a systematic racism in the Netherlands. Okay. Back up. That's what I'm concerned about, is I don't see that systematic evidence. Even if we get to the point that we said this individual was not treated properly in this instance, that can't be enough to warrant asylum. It has to be the systematic part, and I mean, part of what I was struck by – I mean, I know my personal experience isn't particularly relevant, but I lived in the Netherlands. I was there during 9-11. I saw what went on after that. There were some inflamed, you know, emotions on both sides. You had a lot of people who were defending the United States and a lot of people who, you know, also, in light of 9-11, were frustrated with immigrants, but that was sort of short-lived and that seemed to be one of the examples that you relied on for the systematic discrimination, as you put it, and so I would be interested in what other evidence there is because we can't – it can't be enough to get asylum just because one individual was negligently treated, assuming that – you know, giving you the benefit of the doubt. It has to be systematic, so where's the evidence that this is systematic throughout the entire country? I've submitted a lot of documentation and articles. There was a man – If I can clarify on that, you know, I think you provide evidence that there's discriminations against Muslims by other Netherlands citizens, but what's the evidence that the government is not acting upon it or looking the other way? There were at least two incidents in the Netherlands which I submitted articles. One of the incidents, the police sat on a – the name of the person was Henriks. He was coming back from a concert and he is – he's from Aruba, so he looks obviously different. Are there reports from State Department or NGOs that talk about the Netherlands government not addressing discrimination? That's the point. When it comes to westernized countries, I'm sorry to say, the State Department is very – how do I explain this – tender when it comes to their issues of discrimination. But more than that – So now we've got a conspiracy between the Netherlands government and the State Department. It's not a bad conspiracy. The fact of the matter remains that every time there is a case – and I have been – I've been actually listing all the cases that actually the court is using. If the person is talking about the government of Russia, for example, the judge says, okay, the government of Russia could do this. If the person is from the government of Iran, they say it could do this. If it's from China, they say it could happen. But if it's from Italy, if it's especially from Austria, from Germany, and from the Netherlands, oh, well, we know there's discrimination and racism. But it's not to that level. But wait a minute. It seems to me that the more interesting point you're making is that there are layers of the government and that the government – the national government, it appears, is trying to root this out. But the question is whether that's the total answer if, in fact, lower levels of the government are not – yes, are not doing their job. That's the question. But then the next question is, is this case an example of that, or at least was the BIA and the IJ unreasonable in thinking that it wasn't, given that, in fact, with some foot dragging and so on, they did prosecute – they did do enough of an investigation to get the case prosecuted. And then, as I said, we have a black hole about why it didn't succeed. Your Honor, I was not able to get a judgment from the attorney. I would have given it to the judge. I have given the judge every single piece of evidence that I could get. And I was not able to get a judgment. And what he referred to a judgment to me is very strange because I tried to call the attorney and I spoke to him. And he said all they could go after now is the monetary damage. And he said if they have property damage. My clients were almost killed. He was – he received a concussion to his head. And then, by the way – so we're talking about systematic racism in the country. They went to the hospital. And even though he had a concussion, he was released from the hospital that night. He didn't even stay in the hospital so that he would be observed. So the next morning – Was it a government hospital? Exactly. No, was it? Was it a government hospital? But, I mean, the only hospital that they were – they would go. I mean, all – I think all – most governments in – I don't know. The answer is we don't know. We don't know. But, I mean, even then – I also don't know whether the ambulance was a government ambulance. I don't know that, Your Honor. Honestly, I mean, I provided as much evidence as I could possibly do. And my clients testified. And the judge found them credible. We have three testimonies on file. Extensive testimony. And I brought two – I mean, I brought an expert witness twice within several years. At first, when we went to court originally, the – Professor Gabay, who's an expert – who was considered an expert witness in this situation, said that the government of the Netherlands is trying to help, but really is not helping because it's not working. And then he said, I believe that even if this case stays in court, it's going to be there for at least five years. And actually, when we went back – when we went back to court, after I received the fact that after all these years the perpetrators were acquitted, nothing happened because of some unknown thing about, oh, there was not admissible evidence on the part of the injured party. Well, but how do we know that that's not true? I mean, that's part of the problem. Cases are – very successful cases are lost for a whole variety of reasons. Discrimination is just one of them. And I don't think it's fair to suggest that, you know, just because the case looks anomalous that the only conclusion that we can reach is that it was discrimination. More fundamentally, do you have any other cases, either in this court or anywhere – the government of the Netherlands is unwilling to take action to root out the discrimination? No, not at this time. So you're asking us to be the first, the tip of the spear. Yes, but there is a reason why I'm asking you to be the first. Because this is really happening, and no one is paying attention to this. Westernized countries are considered different just because they're westernized countries. And yet bad things happen there all the time. There are systematic abuses. There are racism. Bad things. I am telling you, this case that I told you about, Henriquez, it's an article there. He was coming from a concert. This happened before my client's case. He was coming from a concert, and the police was like racial profiling. By the way, the State Department also states that there's discrimination. He made a joke about a gun, but what was the BIA's reaction to that, which was that it showed that it wasn't discriminatory, wasn't terribly satisfying because it wasn't just that they arrested him. It's that they jumped on him and killed him. So that was arguably the discriminatory part, not that they arrested him or stopped him because he made a joke about a gun. I understand. But if somebody, because the judge, our judge, the immigration judge, said that when I actually talked about that in the oral decision, our immigration judge said in that case he was arrested because he made a joke. That's what I was just saying. Do you want to reserve some time? Oh, I'm so sorry. Yes, I forgot to reserve two minutes for Rebecca. Okay. Thank you very much. Yes, yes, yes. Good morning. Kate Balaban for the government. May it please the Court. So the issue we have here under the statute is whether or not the government of Netherlands was unable or unwilling to control the persecutors. What do we mean by the government? What do we mean by the government? And suppose the scenario was that the police, I'm not saying this is the facts, but the police were, you know, tied in with this group of security guards. The allegation is they knew them and they dealt with them and they came to the scene and they didn't do anything and this guy is lying on the ground looking dead and they don't do anything about that. And they go back and then they purport to be investigating, but in fact they do nothing for months and years at a time. And that the higher levels of the government are trying to stop this. Let's suppose they are affirmatively trying to get police to be responsive and not discriminatory. Who is the government for purposes of our statute at that point? Well, I think, Your Honor, you raise an interesting issue and actually it raises two questions. One is whether or not the persecutors or would-be persecutors are state actors. No, I'm not talking about that. I'm talking about the police. I'm talking about the police. Okay, the police. But I'm hypothesizing that the police were in some cahoots with this group. I'm not saying they are, but I want to get a conceptual answer to who is the government. I think the conceptual answer is that it's the petitioner's burden to show that they were in cahoots. No, I understand. But because Judge Ryan is concerned, Judge Nelson, I mean, that there's not much evidence that the national government of the Netherlands is not actively trying to eliminate discrimination and persecution of this kind, and that seems to be the case. The question is if lower levels of the government were demonstrated to be doing it and they weren't able to control them, I would assume that would come within the statute, even if the national government was actively trying to bring it out. I think here it's important to cling to the case law. And IJ, both these agency decisions, IJ in particular did a great job canvassing the relevant case law. And if you look at Mishri, I think that took place in Germany, that was a case where the petitioner, it was found by this court that the petitioner did show that the government of Germany was unwilling or unable to protect him. But in that situation, there was evidence. So what was the government, and maybe you're getting to this, but that was an individual case about one individual who was not protected by the government, and was there systematic evidence of either a local? No, there wasn't pattern or practice evidence. But what there was was there was strong evidence that the police didn't pursue the case. And that was shown to be enough. And in contrast, I didn't find any cases where there was actually a court case, a conviction. That's the tell here. I mean, that's the problem here. There wasn't a conviction. Right, but acquittals happened. There was a court case. Acquittals happened and dedicated prosecutors the world over. I just want to make sure I understand the government's view. Is the government's view that the government and the statute means one instance of a government actor, one police officer can be enough in that specific case, or do you have to show something more widespread? Well, I think that the framework is set out by the statute. In order to show past persecution, you have to show that there was unwillingness or inability on the part of the government to act. And there are cases that show both, where it's not a systematic government issue. Like in the inability sphere, you have Afriye, where there's one police precinct, and they have one gun in the police precinct. And the petitioner and the alien in that instance shows, I think it's in Ghana, that the government was unable to protect him. But even then, you've got sort of a pattern in practice by the whole precinct. What I'm wondering is can you go down and say, I mean, here the only evidence appears to be, at best, that these officers in this particular circumstance looked the other way, or perhaps worse than that, they actually didn't pursue it or may have even hid this to some degree. So would that be enough to show past persecution in the government's view? Let me answer the question this way. First of all, we don't even know that. We don't even know that. I understand, but I'm saying that's the best case scenario. That's the best case scenario. And I want to know if the government's position is that can never be enough or sometimes it could be enough. Well, I think the issue is that in this instance, it wasn't enough. They brought the case. So your position is as long as the government brings a case, that's the end of the story. Well, it wouldn't necessarily always be. You could, I suppose, have a sham trial, but we don't have any evidence of that here. We simply don't. The Petitioner hasn't put forward any evidence that the trial was a sham. But certainly as to unwilling and perhaps as to unable, but certainly as to unwilling, the fact that there is an entity of the government that is unwilling is sufficient for the statute. It doesn't have to be the government, national government or systematic or anything like that. I think, Your Honor, that the case law is clear that that can be the case. Look at Doe v. Holder and Mistry for past persecution. Okay. So then can I shift you forward? Because does that, the fear of persecution going back, if your evidence is only, the government's position in this case appears to be that, you know, one instance can be enough for past persecution. So then does that, how does that roll into the fear of future persecution? The framework is very clear. And Judge Brewer has outlined it. If you show past persecution, if you show that the government was unwilling or unable, then you get your ticket punched and you get to go to well-founded fear with the burden shifting to the government. That isn't the case here, and it's critically important. So if you don't have your ticket punched in order to show well-founded fear, you have to show either that you would be targeted or that there's a pattern or practice, systematic, in that country. So systematic comes in on the future even if it doesn't come in on the past. Exactly. Okay. It comes in on the future. We've conflated the concepts here, and it's dangerous. No, that's what my, that's what I wanted to clarify. Because it's a question of proof. And the pattern or practice, Petitioner's Counsel argues that pattern or practice. It wouldn't have to be a pattern or practice. It could be that they were unwilling to protect these people. Targeting. Right. Then you would have to show that you have a, then the petitioner, the alien in that situation would have to show that there's a well-founded fear, that there's a good chance that she's going to be, he's going to be targeted. Not because they're part of a suspect class, but because of them as individuals. Exactly. And that. Well, it's hard to show in this instance. Because they're part of a suspect class, but them in particular. Them in particular. It still has to be because, not because somebody doesn't like them. It has to be because of their status. It has to be on account of a protected ground. But that's difficult to show here because as the agency found, the family remains unharmed. So, and there's no fresh threat. So we have stale. But their explanation for that is that those people didn't complain to the police. And not only that, but they're impaired and not in very good condition. Interestingly enough, I was rereading the brief, though, the briefs this morning, Your Honor, and petitioner's counsel highlights the fact that the daughter has pursued the case in the Netherlands. And yet she hasn't been harmed or targeted. So that is evidence that cutting against the likelihood of individual targeting. But at any rate, the pattern or practice, one point I wanted to make is petitioner's counsel has argued that we give Western governments, somehow Western governments get a pass. I think that's a question of proof as opposed to prejudice. Well, it may also be, I mean, hypothetically, that Western governments don't have as much systematic persecution. That's what I mean, Your Honor. It's a question of evidence and proof. And I think it's really important to highlight here that the agency did an unusually fine job of thoroughly canvassing the evidence. And I think that – You agree with the position that there's no other case law in our court or any other court that suggests that the Netherlands or a – okay, take it in two parts. That the national government of the Netherlands is persecuting these individuals or unwilling to stop persecution of these individuals. Is that correct? I didn't see anything in the one – the seminal case on the other side is Rahimzadeh where there was – It's a non-reporting case. So it's like Bringus and non – where the petitioner doesn't report the crime. So it's a different – in a different framework. But in that case – Okay, but then go also – well, I'll let you address that case. But separately, localities within the Netherlands, sort of Judge Berzon's point of, hey, maybe the national government's trying, but we've got little pockets that aren't complying. Is there evidence or are there any court findings in any other court, including our own, that that's going on in the Netherlands somewhere? I didn't see anything. I only – the only Dutch case I looked at was Rahimzadeh, which cuts the other way where they look at country condition evidence and the agency finds that there's no pattern or practice or likelihood of future persecution. What problem – this is just a note which has bothered me for a long time. We have no idea what is going on in cases that – where asylum is granted because they're not even transcribed. And so it's very hard to do any kind of survey of that kind because we know what court cases say, but court cases are only the ones who lose. And I'm always worried about that, that we're getting a misimpression as to what is actually – because we don't see those cases. It goes to a policy question, Your Honor. Presumably. Is this the best way to adjudicate these types of claims? But that's neither here nor there. It only means that to ask the question of whether there's been any cases, really, you can't do it because you don't know what is happening in, what, 50 or 60 percent of the cases. But I will say that if anyone can decide that fairly, it's the agency. They're in the situation to look at the evidence. They see so many cases, those immigration judges. They look through that country condition evidence. They're much more able than we are at this level, and that's – What about the asylum seekers? Do they have access to any of that? Is that something that they could even call out or they just have to rely on the agency? No, they can't. Asylum seekers have, as in this instance, they have – let's look at this case. If we just had the court case, if we had the judgment from the Netherlands, it would help us out. But you're looking – you're asking about country-wide conditioned evidence. The best source of that is the State Department reports. And the – and court cases in this circuit have said that the best judges of those – of that country-conditioned evidence is the agency. And at the agency level, they have the time. They tend to be fairly Pollyanna-ish, though, i.e. they rely on what's on paper and not necessarily what's on the ground. I understand, Your Honor. And it is – it's frustrating. It is frustrating, and it's also unwieldy to go through that record. But I think that argues in favor of leaving it to the agency, which is what the statute does. That's why the – Well, but it – I mean, at the end of the day, it's the asylum seeker's burden. It is their burden. And that – you know, they may be hamstrung by it, but it's their burden. If they don't believe that the State Department's information is correct, it's their burden to seek out a case. who was apparently an expert, and he did testify twice. His testimony was not that specific, I suppose, but he did to some degree contest the State Department's fairly rosy view. I mean, it's within the Court's jurisdiction to say that the record evidence doesn't support a substantial evidence finding, but I don't think that's true in this case. If you look at the expert opinion, look at the country reports, you look at the thorough agency decision, I don't think that would be a wise – Well, and I – but isn't that part of the problem, just speaking to it generally, that when you talk about substantial evidence, it's going to be pretty hard for an asylum seeker to meet that in the face of a government report? Because how are you – I mean, at best, you're going to present conflicting evidence, but you're not going to show – I understand, Your Honor, and I understand the source of your sympathy, but I would point out that if the petitioner in this case had met his burden of showing that there was past persecution and that the government was actually unwilling, if it were a case like Mishry or Doe v. Holder, which is the case in Russia, where you have evidence, a specific piece of evidence that the police said, do this yourself, this is your problem. We don't have that in this case. We don't have solid evidence that the government was unwilling or unable to help. And the statute's very clear that in that instance, the burden stays with the petitioner in the future fear context. Okay, your time is up. Thank you very much. Thank you. You have two minutes to rebuttal, although you are over your time. Your Honor, as the law says, the government does not need to condone – the government of a country does not need to condone the persecution. The question is whether they're able or willing. That's the question. Now, in my brief, I discussed also what we're technically bound by, in a way, which is the UN Convention. The UN Convention talks about effective protection, Your Honor. The standard should be if the government is able to give effective protection because a protection just bringing a lawsuit in court, which ultimately becomes an acquittal, because from the beginning it was doomed to fail because the police didn't do its job. Well, we have no idea why. This is why I keep dead-ending. The police didn't investigate at the scene, but there's no showing that their later investigation wasn't an adequate investigation. We don't know. In other words, they found out who the people were and they apparently got enough evidence to get a prosecutor to go forward, and the prosecutor went forward, and so we have no idea that the investigation was, in fact, inadequate. I mean, the only piece that speaks to me, frankly, is that they, you know, walked away and left somebody unconscious on the ground. That doesn't seem like what a police officer should be doing. But leaving that aside, there's no evidence that it was an inadequate investigation. Yes, you have evidence that they didn't investigate at the scene, but we have no reason to think that resulted in anything. Why didn't they take complaints at the scene? I'm sorry? I know, but you went and you said that's why the prosecution failed. We have no idea that that's why the prosecution failed. Okay, so then we're going back to the situation where an asylum applicant is trying to produce all it is that they have, and which in this situation is, believe me, far more enough documentation than I have in many other asylums. Right, but this is a very unusual case because the police did investigate and the prosecution did bring a prosecution. You know, often, or most usually what you have is people go to the police and the police don't do anything, or the police do, you know, take some notes and you never hear from them again, but that's not what happened here. But the police didn't even interview witnesses on the scene. There were two witnesses on the scene that saw and that heard. And we know that they never investigated them? No, we know that for sure they didn't investigate them on the scene. Right, and they might have talked to them two days later for all we know. The person's witness's memory is best and is the freshest when you're at the scene of the crime. I mean, if they come to me at the scene of the crime and I see a car hitting another car, I would be able to remember every little thing. Two days later, I may forget half of what I saw. And Professor Gabay is not just a – how do I explain this? Although you're talking about generalized knowledge, the fact is that the generalized knowledge says that the police in the Netherlands, when it comes to cases of Muslims and people of different nationalities, the police in the Netherlands takes its time. And there is a case that the judge actually said because the police took its time, it actually shows that they did go through the investigation. Because in another case, the police closed the – I mean, the government closed it. The police closed the case quickly. But that just could work the other way. The fact that the police, even though they had every single piece, they had two witnesses on the scene, they had the family on the scene, the one of them, okay, unconscious on the ground, but they had three. And they had eight bouncers they could have asked at the scene. And they didn't do that. And then the country report said that in 2013, the number of cases that the government of the Netherlands actually prosecuted for people from – who are Muslims are 0.000066%. So it's eight that we have. In 2013, we had 850,000 Muslims in the country of the Netherlands. And only there were about 86 cases that were prosecuted, even though that the country reports, which the government is relying on, which, by the way, is within their control. They could – you know, the asylum seeker doesn't have control over that. We have to wrap up now. Okay. I'm sorry. Cease that, Your Honor. Cease that. They say that it's persecution. Thank you. Okay. Thank you very much. Thank you both for your argument. Back cash versus bars submitted, and we're in recess. All rise. The court is in recess for the day.
judges: Berzon, Nelson, Lee